UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHA ARREDONDO,                        CASE NO.  24-cv-

           Plaintiff,                HON. _____

v.

AMPHENOL BORISCH TECHNOLOGIES,
INC.,
           Defendant.

---

Raymond J. Carey (P33266)
Raymond J. Carey & Associates, PLLC
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(248) 865-0001/ F: (248) 865-0002
rcarey@work-lawyers.com
*Attorneys for Plaintiff*

---

## COMPLAINT AND JURY DEMAND

Plaintiff Asha Arredondo (hereinafter "Plaintiff" or "Ms. Arredondo"), by and through her attorneys, RAYMOND J. CAREY & ASSOCATES, PLLC., complains against Defendant Amphenol Borisch Technologies, Inc. ("Defendant" or "ABT"), as follows:

1.    Plaintiff Asha Arredondo brings this action against Defendant for: discrimination on account of her race in violation of 42 U.S.C. § 1981; discrimination based on race, sex, and pregnancy in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§2000e, *et seq*., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2201, *et seq*.; and discrimination of account of a disability and perceived disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§12101, *et seq*., and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L.A. §§37.1101, *et seq*., arising out of the circumstances leading up to and including Defendant's termination of Plaintiff's employment relationship with it, effective April 2, 2024.

## PARTIES

2.     Plaintiff Asha Arredondo resides in the City of Kentwood, in Kent County, State of Michigan.

3.     Defendant is a for profit corporation organized under the laws of the State of Delaware with corporate offices in Wallingford, Connecticut, but which also has offices and operations in Grand Rapids, Michigan.

4.     Plaintiff had been employed by Defendant since August, 22022, at its operations in Grand Rapids, Michigan, as a production planner until her employment was wrongfully terminated by Defendant, effective April 2, 2024.

## JURISDICTION AND VENUE

5.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      Plaintiff filed a Charge of Discrimination with the EEOC on July 29, 2024, asserting claims against Defendant for discrimination based on race, sex, and pregnancy in violation of Title VII and discrimination of account of a disability and perceived disability in violation of the ADA.

7.      Plaintiff's Charge of Discrimination was filed within the 300-day period after April 2, 2024, when her employment was wrongfully terminated by Defendant.

8.      The EEOC issued a Notice of Suit Rights to Plaintiff with respect to the above referenced Charge of Discrimination on August 23, 2024, and Plaintiff is filing this Complaint to include claims for discrimination based on race, sex, and pregnancy in violation of Title VII and discrimination of account of a disability and perceived disability in violation of the ADA within the requisite 90-day period after she received the Notice.

9.      This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction), 28 U.S.C. §§ 1337, 1343 (civil rights).

10.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims for ELCRA and PWDCRA violations.

11.     This Court has personal jurisdiction over Plaintiff because she resides in Kent County< Michigan, within the Western District of Michigan.

12.    This Court has personal jurisdiction over Defendant because it maintains offices, engages in regular and systematic business and other activities, and its resident agent is located within the Western District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred and adversely affected her within the Western District of Michigan.

13.    Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides within the western District of Michigan; Defendant maintains offices, engages in regular and systematic business and other activities, and its resident agent is located within the Western District of Michigan; and the events that give rise to Plaintiff's claims occurred or had consequences on Plaintiff within the Western District of Michigan.

14.    Venue also is convenient in this judicial district.

## STATEMENT OF FACTS

15.    Ms. Arredondo is a 35-year-old African American female who was born on September 13, 1989.

16.    Ms. Arredondo is afflicted with diagnosed anxiety, depression, and post-traumatic stress ("PTSD") behavioral health disabilities and is susceptible to panic attacks.

17.    Ms. Arredondo takes medication to relieve the effects of these disabling behavioral health conditions.

18.     ABT is a vertically integrated electronic design and manufacturing company.

19.     Ms. Arredondo commenced employment with ABT at its Grand Rapids facility on August 22, 2022, as one of its four production planners and the only African American and female production planner at that location, and she had remained employed by the company in this capacity until April 2, 2024.

20.     Ms. Arredondo was well qualified for the production planner position.

21.     Ms. Arrendondo gave notice of her disabling behavioral health conditions and need take medication to relieve the effects of these conditions on her employment application and thereafter beginning in the Fall, 2022, to the ABT human resources business partner and the lead production planner who was her supervisor at the time.

22.     Ms. Arrendondo became pregnant with her second child during the Fall, 2022.

23.     Ms. Arrendondo gave notice of her pregnancy and of her need for work related accommodations that she had needed for hyperemesis gravidarum she had experienced because of her pregnancy that had been recommended by her obstetrician/gynecologist ("OBGYN") to ABT human resources and other representatives during the Fall, 2022, including the ABT human resources business partner and her supervisor at the time.

24.     Ms. Arrendondo was on maternity leave from April 10, 2023, until June 12, 2023.

25.     Ms. Arredondo's supervisor thereafter joked about her disabling behavioral health conditions and need take medication to relieve the effects of these conditions that had been exacerbated by her pregnancy after she returned from maternity leave and laughed at her in February, 2024, when she experienced a panic attack and adverse reactions to her medications after she had been involved in an automobile accident.

26.     Ms. Arredondo was denied the training for her production planner position that had been provided to the other production planners because of her race, sex, pregnancy, and the disabling behavioral health conditions with which she is afflicted.

27.     Despite this, Ms. Arredondo had performed the duties and responsibilities of the production planner position in a satisfactory or better manner and had not been subject to discipline of any kind ostensibly due to poor performance or misconduct of any kind throughout her employment with ABT.

28.     Ms. Arrendondo's job performance was equivalent or better than the other production planners throughout her employment with ABT.

29.     Ms. Arrendondo's job performance throughout her employment with ABT exceeded the job performance of at least one of the other production planners,

who was a Caucasian male who was not afflicted with disabling behavioral health conditions, routinely used foul language, conducted personal business, and watched Netflix during work time about which management was well-aware in violation of ABT policies, otherwise exhibited consistently poor job performance, and he had been subjected to write-ups other modes of discipline and threatened with employment termination for these reasons.

30.    Although Ms. Arredondo was more than effective in her role as a production planner, she was denied the opportunity to be considered for other positions for which she also was qualified in lieu of what she later learned was a contemplated termination of her employment because of her race, sex, previous pregnancy, and the disabling behavioral health conditions with which she is afflicted, including, but not limited to, pricing analyst and account manager positions.

31.    Although Ms. Arredondo was more than effective in her role as a production planner, ABT representatives terminated Ms. Arredondo employment on April 2, 2024, because of her race, sex, previous pregnancy, and the disabling behavioral health conditions with which she is afflicted.

32.    Ms. Arredondo was dishonestly told by ABT representatives that she had been selected for lay off and employment termination, effective April 2, 2024, ostensibly because ABT had decided to eliminate the position of its lowest

performing production planner although a Caucasia male production planner who was not afflicted with disabling physical or behavioral health conditions and who had been known to have been the poorest performing production planner was retained.

33.    Ms. Arredondo was dishonestly told by ABT representatives that she had been selected for lay off and employment termination, effective April 2, 2024, although she was qualified for and not given due consideration for other available positions for which she was qualified that were later filled by less qualified non-African American employees, male employees, female employees who were not planning to become pregnant, and employees who are not afflicted with disabling health conditions including, but not limited to, pricing analyst and account manager positions.

34.    Defendant's articulated *post hac* reasons for Ms. Arredondo's employment termination are false and otherwise did not justify this adverse employment action.

35.    Defendant's representatives involved in the decision to terminate Ms. Arredondo's employment treated her differently than similarly situated non-African American employees, male employees, female employees who were not planning to become pregnant, and employees who are not afflicted with disabling health conditions when they selected her for employment termination, terminated her

employment, and declined to retain her in other available positions for which she was qualified in lieu of employment termination.

36.    Any alleged reasons articulated by Defendant's representatives for their decision to terminate Ms. Arredondo's employment are false and pretexts for the real reasons for this action, which were because of her race, sex, previous pregnancy, and the disabling behavioral health conditions with which she is afflicted.

## COUNT I
### Discrimination and Interference Based on Race in Violation of 42 U.S.C. § 1981

37.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

38.    At all times relevant, Plaintiff was an employee and Defendant was her employer covered by and within the meaning of 42 U.S.C. § 1981.

39.    At all times relevant, Plaintiff had the same right to make and enforce her express or implied employment agreement with Defendant and to enjoyment of all benefits, privileges, terms, and conditions of her contractual and employment relationship with Defendant as is enjoyed by white citizens of the U.S.

40.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of her race and depriving Plaintiff of her

rights under 42 U.S.C. §1981 to enforce her express or implied employment agreement with Defendant when they:

A.      denied Plaintiff the opportunity during the period before and after April 2, 2024, to be considered for available positions for which she was qualified in lieu of employment termination; and

B.      terminated Plaintiff's employment as one of four production planners ostensibly because one of the four production planner positions had been eliminated and she had been the lowest performing production planner although she had performed the duties and responsibilities of the production planner position in a satisfactory or better manner throughout her employment with Defendant and a Caucasian male known to be the poorest performing production planner was retained.

41.    Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

42.    As a direct and proximate result of Defendant's' discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future wages, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the

enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT II
### Discrimination and Interference Based on Race in Violation of Title VII

43.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

44.    At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by 42 U.S.C. §§ 2000e(b), 2000e-2(a).

45.    At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against her based on her race.

46.    Defendant and its authorized representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of her race and violated Plaintiff's rights under Title VII and 42 U.S.C. § 2000e-2(a) when they:

A.    denied Plaintiff the opportunity during the period before and after April 2, 2024, to be considered for available positions for which she was qualified in lieu of employment termination; and

B.    terminated Plaintiff's employment as one of four production planners ostensibly because one of the four production planner positions had been eliminated and she had been the lowest performing production planner although she had

performed the duties and responsibilities of the production planner position in a satisfactory or better manner throughout her employment with Defendant and a Caucasian male known to be the poorest performing production planner was retained.

47.    Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

48.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future wages, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**COUNT III**
**Discrimination and Interference Based on Race in Violation of the ELCRA**

49.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

50.    At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. §§37.2101, *et seq.* ("ELCRA"). *See* MCL §37.2201(a).

51.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on her race.

52.     Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of her race and depriving Plaintiff of her rights under the ELCRA when they:

A.      denied Plaintiff the opportunity during the period before and after April 2, 2024, to be considered for available positions for which she was qualified in lieu of employment termination; and

B.      terminated Plaintiff's employment as one of four production planners ostensibly because one of the four production planner positions had been eliminated and she had been the lowest performing production planner although she had performed the duties and responsibilities of the production planner position in a satisfactory or better manner throughout her employment with Defendant and a Caucasian male known to be the poorest performing production planner was retained.

53.     Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

54.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future wages, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT IV
## Discrimination and Interference Based on Sex in Violation of Title VII

55.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

56.     At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by 42 U.S.C. §§ 2000e(b), 2000e-2(a).

57.     At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against her based on her sex and previous pregnancy.

58.     Defendant and its authorized representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of her sex and previous pregnancy and violated Plaintiff's rights under Title VII and 42 U.S.C. § 2000e-2(a) when they:

A.      denied Plaintiff the opportunity during the period before and after April 2, 2024, to be considered for available positions for which she was qualified in lieu of employment termination; and

B.      terminated Plaintiff's employment as one of four production planners ostensibly because one of the four production planner positions had been eliminated and she had been the lowest performing production planner although she had performed the duties and responsibilities of the production planner position in a satisfactory or better manner throughout her employment with Defendant and a Caucasian male known to be the poorest performing production planner was retained.

59.      Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

60.      As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future wages, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**COUNT V**
**Discrimination and Interference Based on Sex in Violation of the ELCRA**

61.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

62.    At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. §§37.2101, *et seq*. ("ELCRA"). *See* MCL §37.2201(a).

63.    At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on her sex and previous pregnancy.

64.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of her sex and previous pregnancy and depriving Plaintiff of her rights under the ELCRA when they:

A.    denied Plaintiff the opportunity during the period before and after April 2, 2024, to be considered for available positions for which she was qualified in lieu of employment termination; and

B.    terminated Plaintiff's employment as one of four production planners ostensibly because one of the four production planner positions had been eliminated and she had been the lowest performing production planner although she had performed the duties and responsibilities of the production planner position in a

satisfactory or better manner throughout her employment with Defendant and a Caucasian male known to be the poorest performing production planner was retained.

65.    Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

66.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future wages, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT VI
**Disability Discrimination in violation of the Americans with Disabilities Act**

67.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

68.    At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in the ADA, 42 U.S.C. §§ 12001, *et seq.* *See* 42 U.S.C. §12111(2), (4) and (5)

69.    The ADA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

70.    At all times relevant to this action, Plaintiff was a qualified individual with a disability pursuant to the ADA who, with or without accommodation, could perform the essential functions of her job as a production planner.

71.    At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as having such a disability within the meaning of the ADA because she is afflicted with diagnosed anxiety, depression, and post-traumatic stress ("PTSD") behavioral health disabilities and is susceptible to panic attacks that at time substantially limited Plaintiff's ability to think, concentrate, sleep, interact with others, care for herself, and work, but which was unrelated to her qualifications for and her ability to perform the essential functions of her job as a production planner with or without accommodation.

72.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability, because it regarded Plaintiff as disabled, and/or because Plaintiff had a history of a disability when its representatives:

A.    denied Plaintiff the opportunity during the period before and after April

2, 2024, to be considered for available positions for which she was qualified in lieu

of employment termination; and

B.    terminated Plaintiff's employment as one of four production planners

ostensibly because one of the four production planner positions had been eliminated

and she had been the lowest performing production planner although she had

performed the duties and responsibilities of the production planner position in a

satisfactory or better manner throughout her employment with Defendant and a

Caucasian male who was not afflicted with disabling physical or behavioral health

conditions and known to be the poorest performing production planner was retained.

73.    Defendant's discriminatory treatment of Plaintiff was intentional and

willful and was committed with malice or with reckless indifference to Plaintiff's

rights.

74.    As a direct and proximate result of Defendant's discriminatory conduct,

Plaintiff has sustained damages, including, but not limited to: loss of past, present

and future wages, bonuses, incentive compensation, and earning capacity; loss of the

value retirement, health care, 401(k), and other benefits; mental and emotional

distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment

of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful

employment of choice.

## COUNT VII
## Disability Discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act
## ("PWDCRA")

75.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

76.    At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in Michigan's PWDCRA, M.C.L.A. §37.1101, *et seq.*

77.    The PWDCRA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

78.    At all times relevant to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job as a production planner.

79.    At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as having such a disability within the meaning of the PWDCRA because she is afflicted with diagnosed anxiety, depression, and post-traumatic stress ("PTSD") behavioral health disabilities and is susceptible to panic attacks that

at time substantially limited Plaintiff's ability to think, concentrate, sleep, interact with others, care for herself, and work, but which was unrelated to her qualifications for and her ability to perform the essential functions of her job as a production planner with or without accommodation.

80.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability, because it regarded Plaintiff as disabled, and/or because Plaintiff had a history of a disability when its representatives:

A.    denied Plaintiff the opportunity during the period before and after April 2, 2024, to be considered for available positions for which she was qualified in lieu of employment termination; and

B.    terminated Plaintiff's employment as one of four production planners ostensibly because one of the four production planner positions had been eliminated and she had been the lowest performing production planner although she had performed the duties and responsibilities of the production planner position in a satisfactory or better manner throughout her employment with Defendant and a Caucasian male who was not afflicted with disabling physical or behavioral health conditions and known to be the poorest performing production planner was retained.

81.    Defendant's discriminatory treatment of Plaintiff was intentional and willful and was committed with malice or with reckless indifference to Plaintiff's rights.

82.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to: loss of past, present and future wages, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**Wherefore,** Plaintiff requests the following relief against Defendant:

A.    A Judgment or Order reinstating Plaintiff to her former position or a comparable one with full seniority rights and restoration of compensation and benefits retroactive to April 2, 2024;

B.    A Judgment or Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 to which she is found to be entitled, inclusive of back and front pay, bonus, and other compensation lost by Plaintiff due to termination of her employment and reimbursement for costs incurred by Plaintiff to replace lost benefits or to cover medical and other expenses for which

reimbursement would have been provided in accordance with terms of benefit plans for which Plaintiff previously had been eligible;

    C.    A Judgment or Order of this Court awarding Plaintiff compensatory and punitive damages for violation of 42 U.S.C. § 1981 and Title VII;

    D.    A Judgment or Order of this Court awarding Plaintiff compensatory and exemplary damages for mental anguish, emotional distress, humiliation, and injury to his reputation;

    E.    A Declaratory Judgment of this Court restoring Plaintiff's benefits retroactive to the date when her employment was terminated and requiring Defendant to fund these as though Plaintiff's employment had not been terminated;

    F.    A Judgment or Order of this Court awarding Plaintiff pre- and post-judgment interest, costs, and attorney fees; and

    H.    A Judgment or Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

    Respectfully submitted,

    **Raymond J. Carey & Associates, PLLC**

    BY:    */s/ Raymond J. Carey*
              Raymond J. Carey (P33266)
              Attorneys for Plaintiff
              30500 Northwestern Hwy. Suite 425
              Farmington Hills, MI 48334

Dated: November 15, 2024    (248) 865-0001
              rcarey@work-lawyers.com

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ASHA ARREDONDO,                           CASE NO. 24-cv-

          Plaintiff,                 HON. _____

v.

AMPHENOL BORISCH TECHNOLOGIES,
INC.,
          Defendant.
_____

Raymond J. Carey (P33266)
Raymond J. Carey & Associates, PLLC
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(248) 865-0001/ F: (248) 865-0001
rcarey@work-lawyers.com
*Attorneys for Plaintiff*
_____

## DEMAND FOR TRIAL BY JURY

      Plaintiff Asha Arredondo, by her attorneys, Raymond J. Carey & Associates,

PLLC, demands a trial by Jury.

                        Respectfully submitted,

                        **Raymond J. Carey & Associates, PLLC**
                        BY:  */s/ Raymond J. Carey*
                                Raymond J. Carey (P33266)
                                Attorneys for Plaintiff
                                30500 Northwestern Hwy. Suite 425
                                Farmington Hills, MI 48334
Dated: November 15, 2024           (248) 865-0001
                                rcarey@work-lawyers.com